UST CAPITAL CORP., Plaintiff,

v.

CHARTER NATIONAL LIFE INSURANCE COMPANY, Defendant and Third–Party Plaintiff,

v.

Barry LEVIN, Earle Groper, Robert Effenson and Irwin Jacobson, Third–Party Defendants and Additional Defendant on Counterclaim.

Civ. A. No. 77–21–Z.

United States District Court, D. Massachusetts.

July 10, 1986.

Robert D. Keefe, Harold Hestnes, Hale & Dorr, Robert D. Cohan, Boston, Mass., for plaintiff.

Harvey A. Silverglate, Judith H. Mizner, Silverglate, Gertner, Baker, Fine & Good, Boston, Mass., for Levin and Groper.

Robert W. Meserve, Michael J. Liston, Palmer & Dodge, Boston, Mass., Robert G. Clark, III, Office of Robert G. Clark, Jr., Brockton, Mass., Raymond Fitzgerald, David G. Samuels, Butler, Fitzgerald & Potter, New York City, for Charter Nat. Life.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Plaintiff, UST Capital Corp. ("UST"), assignee of an insurance policy ("policy") issued by defendant and third-party plaintiff Charter National Life Insurance Company ("Charter"), brought this action to recover the face value of the policy. In its Answer to Amended Complaint, filed in October 1985—some eight years after this action was commenced[1]—Charter asserted numerous affirmative defenses and, for the first time, a series of counterclaims and third-party claims. Plaintiff has moved to dismiss the first counterclaim. Third-party defendants Levin, Groper and Effenson ("third-party defendants") have moved for dismissal of all three claims against them. For the reasons set forth below, the motions are allowed.

The Answer to Amended Complaint alleges, *inter alia*, that the policy was procured by means of a conspiracy to defraud Charter by Levin and Groper, formerly treasurer and chairman of the now defunct Hamilton's, Inc., assignor of the policy, Effenson, an insurance agent, and Jacobson, a physician. The two counterclaims charge plaintiff and the third-party defendants with violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961–1968 (West 1984), and with common law fraud. There is also a third-party claim for indemnification.

Addressing first the motions of the third-party defendants, the issue of the indemnification claim is the most simply resolved. At oral argument on these motions, plaintiff conceded that if Charter successfully proved that the policy was fraudulently obtained—even if that fraud could not be tied to UST—it could not recover. Accordingly, because the proof necessary to sustain the indemnification claim—namely, that the fraudulent acts of one or all of the third-party defendants caused Charter to issue the policy—will necessarily result in a defendant's verdict on the original complaint, no claim for indemnification can ever arise. Accordingly, the third-party indemnification claim is dismissed.

The third-party defendants raise two principal challenges to the remaining claims against them. First, they assert that both claims are barred by the statute of limitations. Second, they argue that Charter has failed to make out a claim under RICO, because it has not alleged a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).[2]

The parties agree that the limitations period applicable to both the RICO and the fraud claim is three years. Charter contends that although the conspiracy to defraud it began in 1976, when the third-party defendants acquired the policy, it continues today, through the prosecution of this lawsuit. It asserts that the fraudulent scheme is a "continuing tort," and that the statute of limitations was accordingly tolled until the "cessation of the wrong." See 54 C.J.S. *Limitations of Actions* § 169 at 128 (1978 & Supp.1985), *quoted in* Charter's Memorandum of Law. But "[a] continuing tort sufficient to toll the statute of limitations is occasioned by continual unlawful acts, not continuing ill effects from an original tort." *Maslauskas v. United States,* 583 F.Supp. 349 (D.Mass.1984) (cite omitted). Charter has cited to no case which holds that it is an "unlawful act" to bring a lawsuit to collect on a fraudulently acquired debt.

The unlawful acts on which the RICO and fraud claims are based were those committed and concluded in 1976 to obtain the policy. The statute of limitations began to run—at the very latest—in 1979, when the third-party defendants were tried in state court on criminal charges related to those same acts of fraud and Charter discovered, or should have discovered, the acts of which it complains. *See Cook v.*

---

1. The Amended Complaint was filed in September 1985. By an Order of this Court, dated November 8, 1978, discovery in this action was stayed pending the conclusion of related state criminal proceedings.

2. The third-party defendants also argued that the allegations of wire fraud in the RICO claim should be dismissed for Charter's failure to comply with the particularity requirements of Fed.R.Civ.P. 9(b).

*Avien,* 573 F.2d 685 (1st Cir.1978). The RICO and fraud claims against them, brought over six years later, are therefore time-barred. They are accordingly dismissed.

Because the first counterclaim is a compulsory counterclaim, Fed.R.Civ.P. 13(a), it is not time-barred as against plaintiff UST. *See Burlington Industries v. Milliken & Co.,* 690 F.2d 380, 389 (4th Cir.1982), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983) (citing 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1419 at 109 (1977) (institution of plaintiff's suit tolls statute of limitations governing compulsory counterclaim). Like the third-party defendants, plaintiff also challenges the RICO claim for its failure to allege a "pattern of racketeering activity." On that basis, the first counterclaim is dismissed.[3]

The courts that have considered the proper construction of the word "pattern" in RICO have failed to reach a consensus. While some have held that a "pattern" requires at least two separate criminal episodes, *see, e.g., Northern Trust Bank/O'Hare v. Inryco, Inc.,* 615 F.Supp. 828 (N.D.Ill.1985); *Exeter Towers Associates v. Bowditch,* 604 F.Supp. 1547 (D.Mass.1985), others have found that multiple fraudulent acts in furtherance of a single episode suffice to ground a claim under RICO. *See, e.g., Trak Microcomputer Corp. v. Wearne Brothers,* 628 F.Supp. 1089 (N.D.Ill.1985); *Conan Properties v. Mattel, Inc.,* 619 F.Supp. 1167 (S.D.N.Y. 1985). Footnote 14 of the Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Company, Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985), has been interpreted to support both readings of the statute. I am persuaded that the correct reading is that adopted by Judge Keeton in *Exeter Towers, supra,* and that the "connotations of a 'pattern of racketeering activity,' as that phrase is used in the RICO statute, are not satisfied by proof that, in effectuating the purchase of a single [insurance policy], [UST] committed two or

more predicate acts of ... fraud." *Id.* at 1554. As it fails to state a claim upon which relief can be granted, Charter's first counterclaim is dismissed.

Accordingly, the motions of third-party defendants Groper, Levin and Effenson are allowed with respect to all claims against them. Plaintiff's motion to dismiss the first counterclaim is also allowed.

---

**3.** UST also challenged the RICO claim on the ground that Charter failed to demonstrate UST's

connection to the alleged "enterprise," Hamilton's Inc. I do not reach that argument.