**Ganem Kurt CARTWRIGHT, Jr., Plaintiff,**

**v.**

**COLORADO BANK OF WALSH, INC., a Colorado corporation, John Gehlhausen, James Bailey, Marvin Daniels, and Larry Harper, Defendants.**

**Civ. A. No. 86–K–1807.**

United States District Court, D. Colorado.

April 20, 1987.

Carl D. Fatta, Pueblo, Colo., and Pete Cordova, Salida, Colo., for plaintiff.

Lewis M. Quigg, Shaw, Simons & Quigg, Pueblo, Colo., for Colorado State Bank, Bailey, Daniels & Harper.

Duncan W. Cameron, and Susan J. Trout, Hall & Evans, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This diversity action is before me on motions by defendant Colorado Bank to dismiss and by defendant John Gehlhausen for summary judgment. The relevant facts are lengthy and complex since they stem from a tangled series of financial transactions and legal actions taking place between plaintiff and defendants over the space of nine and one-half years.

The initial interaction between the parties giving rise to the case at bar revolved around a promissory note entered into between plaintiff and defendant bank in March of 1978. The note was purported to contain a 90% unconditional federal guarantee through the FHA. When the parties signed the note, the bank had only a conditional guarantee which was revoked by the FHA in May for the bank's failure to obtain adequate security on the note. Regardless of the guarantee status, advances under the promissory note were made by the bank to plaintiff over the course of two months, cattle owned by plaintiff were used for collateral and the bank consented to plaintiff's transfer of the cattle to Wyoming during that period. That consent was noted on a loan comment sheet.

A year later plaintiff had paid off a considerable amount of interest on the promissory note. Yet by August of 1979, and after the bank's failure to file or perfect a security interest in the transferred collateral cattle, the bank deemed itself insecure under the provisions of the note, and accel-

erated payment. With the assistance of attorney, defendant Gehlhausen, the bank declared plaintiff to have violated the security agreements by removing the cattle from the state without written authorization from the bank, and by refusing to allow the bank to inspect the cattle as per the agreement. Both defendants interpreted these actions to constitute default. Facts presented by all parties, however, strongly suggest both that plaintiff was given written permission by a bank official for the transfer, and that the bank's decision to accelerate payment may have instead been due to its own mishandling in guaranteeing the security interest.

By the end of August the bank had filed suit in a Colorado state court seeking a money judgment against plaintiff in the amount of the promissory note, and claiming entitlement to plaintiff's property in a replevin determination. The court granted summary judgment to the bank in February of 1980 for the amounts requested, but any further proceedings were interrupted by plaintiff's filing of an automatic stay under a bankruptcy action initiated to determine his debtor status.

In December of 1980, the bankruptcy court refused to discharge plaintiff's debts since it did not find credible plaintiff's explanation of his loss of assets.

In May of 1981, the bank, again with the assistance of defendant Gehlhausen, convinced a Colorado district attorney to bring criminal charges against plaintiff for the felony violation of defrauding a secured creditor. Although plaintiff was bound over for trial in November of that year, all charges were later dismissed, after trial commenced in August of 1982, for lack of evidence. That dismissal was based primarily on testimony from the bank's own representative indicating that plaintiff had indeed been given permission to transfer the cattle.

Two years later, in August of 1984, plaintiff instituted a state court civil action against the bank alleging nine claims for relief, including malicious prosecution, abuse of process, breach of contract, fraud, and libel and slander. Although the complaint was detailed and cogent, that same month defendant bank made an untimely motion to make the complaint more definite and certain.

In November of that year, the court granted that motion irrespective of its nonconformity with time requirements, and plaintiff attempted to comply by submitting a simple laundry list of his causes of action. Additionally, defendant bank was granted an extension of time in which to answer the complaint, stating that it was unable to respond properly to plaintiff's nine distinct tort claims within the ten day time limit provided for in the local rules. By December, however, defendant bank instead only filed a motion to dismiss proclaiming plaintiff's failure to state a claim upon which relief can be granted. Citing only a local rule concerning pleading form, defendant's motion made no attempt to invoke a substantive response to the complaint. Indeed, the motion was obviously in disregard of both the competency and the merits of plaintiff's complaint since it merely realleged that plaintiff still had not specifically explained the nature of the torts claimed. Neither the plaintiff nor the court responded to this motion.

Nearly a year later, in November of 1985, plaintiff filed a notice with the court of his voluntary dismissal of his state action pursuant to state procedural rule C.R. C.P. 41(a)(1)(A) providing for voluntary dismissal on the plaintiff's notice so long as costs are paid, and the notice for dismissal is filed before either an answer or a motion for summary judgment by the opposing party has been filed. Agreeing with an erroneous interpretation of C.R.C.P. 41(a)(1) proposed by defendant Gehlhausen, the state court considered the voluntary dismissal to be one under C.R.C.P. 41(a)(1)(B) instead, an alternative provision which requires a stipulation of dismissal signed by all parties to the suit. Relying on a finding simply that defendant had filed a motion to dismiss, and that no signed stipulation existed or had been agreed to, the state action was supposedly dismissed again with prejudice by the state court citing C.R.C.P. 41(a)(2) for refusal by

plaintiff to prosecute the action with diligence.

Plaintiff filed an untimely motion with the court to amend or for reconsideration, but this motion was denied in September of 1986 under the deemer provision of C.R. C.P. 59(j). Plaintiff did not appeal either state court determination.

Plaintiff filed the present action in this court in August of 1986. His complaint has recently been allowed to be amended to add parties and claims, and as amended it currently seeks five claims for relief. These are malicious prosecution, abuse of process, breach of contract, trade libel, and fraud. In addition, plaintiff seeks punitive damages against all defendants.

Both defendant bank and defendant Gehlhausen rely on similar arguments in support of their respective motions to dismiss and for summary judgment. They claim principles of res judicata or collateral estoppel bar all of plaintiff's claims, that the malicious prosecution and abuse of process claims are defective and insufficient as a matter of law, and that the breach of contract, trade libel, and abuse of process claims are time-barred by the applicable statutes of limitations. In addition, defendant Gehlhausen claims he was not a party to any contract with plaintiff for purposes of plaintiff's breach of contract claim.

Plaintiff has responded with various statute of limitations arguments, and claims that all elements required for proof of malicious prosecution and abuse of process are supported by alleged facts.[1]

Plaintiff raises an intriguing response to defendants' res judicata arguments. He reasons that because neither a motion for summary judgment nor an answer was filed by defendant bank in the state court action before he filed his C.R.C.P. 41(a)(1) voluntary dismissal, that filed dismissal operated to close the state court action independent of the state judge's later decision to treat it differently. Plaintiff claims that from the moment of filing the voluntary dismissal, the state court had no jurisdiction to render the various later judgments against him, and thus the dismissal with prejudice of his action was void as a matter of law so that res judicata or collateral estoppel principles could not now apply.

Defendant bank disputes plaintiff's interpretation of the Colorado statute. Defendant Gehlhausen, on the other hand, has responded to plaintiff's res judicata arguments under the rubric of a rather novel legal analysis. Gehlhausen suggests the Full Faith and Credit clause of Article IV of the U.S. Constitution absolutely precludes federal courts from inquiring into "whatever mistakes of law may underlie the judgment" of a state court. Gehlhausen finds support for his interpretation of the role of the federal judiciary by citing a single fact-bound proposition from a Supreme Court case concerning the scope of state appellate review of notice requirements for jurisdiction in an *in rem* proceeding in a state trial court.

For defendant bank to prevail on a motion to dismiss under Rule 12(b)(6), Fed.R. Civ.P., it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir.1976). All facts must be construed in favor of the plaintiff. *Gardner v. Toilet Goods Ass'n.*, 387 U.S. 167, 172, 87 S.Ct. 1526, 1529, 18 L.Ed.2d 704 (1967). So long as the plaintiff may offer evidence to support a legally recognized claim for relief, the motion to dismiss should be denied. *Brezinski v. F.W. Woolworth*, 626 F.Supp. 240, 241–2 (D.Colo.1986).

---

1. All three parties have withheld relevant facts concerning their respective roles in the various transactions and legal actions put in issue by the motions before me. Plaintiff, defendant bank, and defendant Gehlhausen have each decided, for whatever reasons, not to include certain documents in their voluminous attachments to their briefs which, though essential to my understanding of the order of events of the state action, remain damaging to their arguments. The conspicuous absences of these documents, which are unquestionably in the possession of all parties concerned, work a hardship on my judicial efforts in this case serious enough to raise the spectre of court sanctions.

The summary disposition which Gehlhausen now requests is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining the existence of any genuine issue of material fact, the record is construed in the light most favorable to the party opposing the motion. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir.1980). However, the adverse party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### A. *Preclusion of All Claims by Prior Adjudication*

It is first necessary for the disposition of both pending motions to make a threshold determination of whether plaintiff's federal claims, nearly identical to the claims he raised in the state action, are barred from being litigated by the doctrines of res judicata and collateral estoppel. This determination, in turn, can only be made upon analysis of the effect of plaintiff's filing of his motion to dismiss voluntarily his state complaint at the juncture detailed above.

C.R.C.P. 41(a)(1) is a straightforward statute which expressly provides:

"(A)n action may be dismissed by the plaintiff without order of court upon payment of costs: (A) By filing a notice of dismissal at any time before filing or service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs; or (B) by filing a stipulation of dismissal signed by all parties who have appeared in the action or by their attorneys.

Worded in the alternative, the statute is not equivocal concerning what the adverse party must file in order to preclude the use of provision (A); the language makes clear that only an answer or a motion for summary judgment will suffice. There is no mention in the statute of the effect of the adverse party's filing of a motion to dismiss. Since Colorado law demands that where the plaintiff meets the sequential requirements of the statute, he or she need do no more than file a notice of dismissal with the court clerk in order to close the file, it has been correspondingly held that the court has no significant role to play after this action. Therefore, the action stands dismissed without any need for a further court order. *Alexander v. Morrison-Knudsen Co.*, 166 Colo. 118, 444 P.2d 397, 403–4 (1968); *Chamberlain v. Chamberlain*, 108 Colo. 538, 120 P.2d 641 (1941).

Although in general the court's jurisdiction does not then automatically terminate for all purposes, the file is closed and the only functions left for the court to perform concern practical, not substantive, considerations. *Alexander*, 444 P.2d at 403–4.

In the state action, defendant bank's first move was to request a bill of particulars. An inexpert response to such a request hardly would conclude the suit adversely to plaintiff in any normal situation; the court would have allowed plaintiff to refile or amend his complaint in order to make the pleadings conform to statutory requirements. Apart from requesting more time, the bank's second and last move was to request dismissal of the complaint because of the technical difficulty of responding. Defendant bank never filed an answer. It did not move for summary judgment in consideration of the merits of the complaint. The motion to dismiss did not pretend to touch the merits of the complaint. No facts have been presented to me, other than self-serving and conclusory statements offered by defendants, which demonstrate plaintiff did not pay his court costs in that state action, and in the absence of some evidence to the contrary, I would be unjustified in presuming they were not paid or that more was required then the performance of a clerical act of assessing and billing costs.

To argue that plaintiff by his actions did not voluntarily dismiss without prejudice, under circumstances where, (1) defendant itself had impliedly requested that type of

dismissal, and (2) plaintiff was in obvious compliance with the letter of the statute, then, would require the use of reasoning which would escape the bounds of logic completely. Courts exist to provide forums for settling litigitable matters between disputing parties; the responsibility of courts to do justice between such parties necessarily implies that rules which permit a court to dismiss actions are not to be interpreted as rules of forfeiture, but merely as guides for the orderly and efficient administration of the courts instead. *Mizar v. Jones,* 157 Colo. 535, 403 P.2d 767, 769 (1965).

▪ Plaintiff thus concluded his own state action through proper compliance with the requirements of state statute. Even if such a conclusion to the complaint could somehow be considered a judgment on that action, most assuredly it would be a judgment based on a preliminary, subsidiary, or technical ground not concerning the merits of the case, and thus no bar to a subsequent action on the same claims anyway. *McBride v. State, Dept. of Revenue, Motor Vehicle Division,* 626 P.2d 760 (Colo.App.1981); *Saunders v. Bankston,* 31 Colo.App. 551, 506 P.2d 1253 (1972). Since I find that plaintiff's actions in voluntarily dismissing under 41(A)(1)(A) served automatically to close his suit, however, there is no need to decide what effect, if any, I might need to give the state court's later decisions. State law is clear not only that such *a retro* adjudications cannot impact on the effect of the valid dismissal, but also that the parties need not wait on court pronouncements as to the validity of the dismissal in order for its effects to be felt. For that reason, I decline to concern myself with defendant Gehlhausen's exclamations of the significance of the Full Faith and Credit clause. *See generally, C.F. & I. Steel Corp. v. Charnes,* 637 P.2d 324, 328–29 (Colo.1981).

My conclusion that defendants cannot rely on those later state judicial determinations in seeking to bar plaintiff's federal complaint is plainly supported by comprehension of the doctrines of res judicata and collateral estoppel. Under the single phrase "res judicata", many have commonly and unfortunately lumped comprehension of two very different effects of prior judgments. Res judicata demands the preclusion of matters which were never litigated, and has the effect of foreclosing any litigation of such non-existent matters because of the determination that they *should* have been advanced in the earlier suit. Collateral estoppel, on the other hand, demands preclusion of matters which have already once been decided. *See Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396, 399 (1973).

▪ Collateral estoppel could not even apply here. The situation at hand instead must invoke the question of whether application of res judicata is necessary. Under the specific components of that doctrine, a valid and final judgment of a trial court operates to preclude a second action on plaintiff's claim or any part of it. That preclusion, however, is not possible where either the former judgment was invalid, or where plaintiff had no full and fair opportunity to get to the merits of the case. *Wells v. Premier Indus. Corp.,* 691 P.2d 765 (Colo.App.1984); *See generally, Delve v. Three Lakes Water and Sanitation District,* 568 F.Supp. 662, 663–4 (D.Colo.1983). In complement to those exceptions, where no judgment at all arises from the prior legal action, the threshold of a valid and final judgment in an earlier determination has not been reached, and res judicata cannot apply at all. *Dawn v. Mecom,* 520 F.Supp. 1194, 1196 (D.Colo.1981). The absence of a valid judgment, or of any judgment at all, precludes summary disposition of the instant suit on res judicata grounds. Since it is the existence and validity of binding state determinations—not plaintiff's opportunity for adjudication or what plaintiff specifically claimed in state court—which is in issue in the case at bar, defendant's remonstrations about concepts of identity, mutuality, plaintiff's neglect in adequately appealing the state court's orders, or waiver and estoppel are immaterial.

**B. *Malicious Prosecution***

The elements of a claim of malicious prosecution are: (1) the institution of a

criminal action, (2) its legal causation by the defendant, (3) its termination in favor of the defendant, (4) absence of probable cause for the complaint, (5) the presence of malice, and (6) damage to the plaintiff. *Lounder v. Jacobs,* 119 Colo. 511, 205 P.2d 236 (1949). All parties are in agreement as to the existence of the first three elements and in dispute over existence of the last three.

Defendants misconstrue the term "probable cause" as it is specifically used here, however. In arguing that because plaintiff was bound over for trial by a magistrate upon the charges instigated by defendants probable cause is required to be found as a matter of law and fact, defendants erroneously mix their legal terminology. The standards of rational human judgment and conduct determine what is and what is not probable cause for purposes of tort. Under this standard the issue is whether defendants objectively relied on reasonable grounds in instituting charges, not how the charges were procedurally handled by the court. *Bill Dreiling Motor Co. v. Herlein,* 543 P.2d 1283, 1285 (Colo.App.1975).[2]

■ I find genuine questions of fact exist concerning whether defendants maintained reasonable grounds for pursuing plaintiff's criminal charges in light of (1) both defendants' recently frustrated attempts to satisfy personal civil judgments against plaintiff, and (2) imputation to both defendants of knowledge of the bank official's grant of permission to plaintiff to transfer the cattle. Since it is well-settled that malice may be implied from showing the absence of probable cause, *Sancetta v. Apollo Stereo Music Co., Inc.,* 44 Colo. App. 292, 616 P.2d 182 (1980), that element as well may possibly exist. Finally, pleadings and affadavits submitted by all parties make it unclear whether plaintiff may have suffered various types of harm as a result of the institution and commencement of the criminal charges. Defendants' motions on the malicious prosecution claim are therefore denied.

### C. *Abuse of Process*

The period of time within which one must bring a claim of abuse of process is governed by 1973 C.R.S. § 13–80–102 (1986 Cum.Supp.). That statute bars an abuse of process action if suit is not brought within two years from when the cause of action accrues. A cause of action for injury from that tort is considered to accrue on the date when both the injury and its cause are known or should have been known by the exercise of reasonable diligence. 1973 C.R.S. § 13–80–108 (1986 Cum.Sup.).

■ The replevin action plaintiff focuses on for his abuse of process claim was instituted in 1979. Judgment was obtained in 1980. If a cause of action from tort injury accrued at all, it would have been from the conclusion of the proceedings. Thus, plaintiff's claim is clearly time-barred.

■ Even were the statute of limitations not to apply, plaintiff has not competently alleged a claim for abuse of process. The elements of a cause of action for abuse of process include proof of an ulterior purpose in the use of judicial proceedings, and willful actions in the use of the process which are not proper in the regular course of the proceedings. *Institute for Professional Development v. Regis College,* 536 F.Supp. 632, 634–5 (D.Colo.1982). Plaintiff's claim that the replevin action was instituted for an improper purpose is insufficient; an improper *use* of process must be demonstrated. *Id.* at 635.

### D. *Breach of Contract*

■ Colorado law does not recognize an independent tort action for breach of contract. *Shewmake v. Badger Oil,* 654 F.Supp. 1184 (D.Colo.1987). Even were

**2.** Defendants citation to a fifty-year old case, seemingly holding that probable cause as an element may be evidenced from judicial determination of probable cause as a criminal procedure term, is unavailing. Apart from the alarmingly outmoded nature of its analysis when read in light of more recent developments in the tort field, that case, *Addington v. Bates,* 101 Colo. 293, 73 P.2d 529 (1937), relies heavily on noting that the defendant there was actually adjudged guilty in a trial court. The factual distinction between such a finding and the case at bar, where plaintiff was merely bound over *for* trial by a magistrate, is a potent and conclusive one.

this not so, no facts whatsoever have been presented (1) demonstrating the existence of a contract between plaintiff and defendant Gehlhausen, or (2) finding the injuries to have been claimed to have accrued within the period of any applicable statute of limitations. This claim, therefore, must be dismissed.

### E. *Trade Libel*

Only defendant Gehlhausen has attempted to respond to plaintiff's trade libel claim in alleging it is time-barred by the applicable statute of limitations and that it fails to state sufficiently a claim.

In *Idaho Norland Corp. v. Caelter Industries, Inc.,* 509 F.Supp. 1070, 1071–2 (D.Colo.1981), Judge Carrigan held that a claim of trade libel would be governed by a six-year statute of limitations. Unless and until the Colorado legislature specifically decides otherwise, I will follow *Idaho Norland.* Although plaintiff is vague concerning actual dates, names, and communications falling under the trade libel claim, I find the amended complaint as a whole shows some possibility of defamatory communications concerning his business reputation and goods may have occurred well within six years of his filing the present suit.

Since this claim is not time-barred and is sufficient, summary judgment would be a highly inappropriate disposition of a trade libel claim merely because it remains vague—other, less final remedies are available.

### F. *Fraud*

This claim is merely a reiteration of the earlier claim for abuse of process, and does not allege elements of fraud or misrepresentation. Plaintiff, contrary to his assertions in this claim, cannot stand in the shoes of a state court judge in claiming that reliance on, or injury from, such fraud occurred. As separate from the abuse of process claim, this claim for relief must be dismissed.

IT IS THEREFORE ORDERED:

1. Defendant Colorado Bank's motion to dismiss is GRANTED for plaintiff's abuse of process and breach of contract claims and DENIED as to plaintiff's malicious prosecution claim.

2. Defendant Gehlhausen's motion for summary judgment is GRANTED for plaintiff's abuse of process, breach of contract, and fraud claims, and DENIED as to plaintiff's malicious prosecution and trade libel claims.

3. Plaintiff's abuse of process, breach of contract, and fraud claims are dismissed.