**FULL DRAW PRODUCTIONS,**
a Colorado corporation,
Plaintiff,

v.

**EASTON SPORTS, INC., a California corporation; Papes, Inc., a Kentucky corporation; Browning Arms Company, a Utah corporation; Precision Shooting Equipment, a Delaware corporation; Hoyt U.S.A., Inc., a Califor-**

---

nia corporation; Bear Archery, Inc., a Delaware corporation; ACI Consolidated, Inc., a Michigan corporation; Outtech, Inc., a New Jersey corporation; Ehlert Publishing Company, a subsidiary of Affinity Group, Inc.; Archery Manufacturing and Merchants Organization, a Florida trade association; Saunders Archery Co., Inc., a Nebraska corporation; New Archery Products Corporation, an Illinois corporation; Darton Archery, a Michigan corporation; Bemans U.S.A., Inc., a Utah corporation, Defendants.

No. Civ.A.97–WY–1121–CB.

United States District Court, D. Colorado.

Jan. 31, 2000.

James A. Jablonski, Gorsuch, Kirgis, LLP, Denver, CO, for plaintiff.

John M. Peterson, Howe & Hutton, Ltd., Chicago, IL, for defendants.

## ORDER

BRIMMER, District Judge, Sitting by Designation.

This matter comes before the Court on Plaintiff's Motion to Dismiss Counterclaims, filed on October 26, 1999. After reading the briefs, hearing oral arguments, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### *Background*[1]

This case arises out of a feud between rival organizers of trade shows designed to serve the needs of the archery industry. Full Draw Productions ("Full Draw"), Plaintiff, is a Colorado corporation which was formed for the purpose of presenting a trade show called the Bowhunting Trade Show (the "BTS"). (Pl.'s Third Am. Compl. ¶ 1–2; AMO's Answer to Third Am.Compl. ¶ 2.) Defendants include the Archery Manufacturers and Merchants Organization ("AMO"), a trade association, as well as various participants in the archery industry who are members of AMO. (Pl.'s Third Am.Compl. ¶ 3–47; AMO's Answer to Third Am.Compl. ¶ 3–47.)

Full Draw entered into an agreement with AMO under which AMO would endorse Full Draw's BTS in exchange for ten percent of the gross receipts. (Pl.'s Third Am.Compl. ¶ 77; AMO's Answer to Third Am.Compl. ¶ 77.) After several years operating under this arrangement, AMO demanded more favorable terms which Full Draw refused. (Pl.'s Third Am.Compl. ¶ 80–81; AMO's Answer to Third Am. Compl. ¶ 80–81.) Full Draw and AMO subsequently entered fruitless discussions regarding Full Draw's sale of the BTS to AMO. (Pl.'s Third Am.Compl. ¶ 77; AMO's Answer to Third Am.Compl. ¶ 77.) After the endorsement fee and sale negotiations failed, AMO and the other defendants decided to put on their own rival Archery Trade Show. (Pl.'s Third Am.Compl. ¶ 106; AMO's Answer to Third Am.Compl. ¶ 106.)

On May 30, 1997, Full Draw brought suit against AMO and other defendants asserting claims for violations of sections 1 and 2 of the Sherman Act, as well as a state law claim for tortious interference with prospective business advantage. (Pl.'s Compl. ¶¶ 90–112.) Full Draw was twice granted leave to amend its complaint. Its second amended complaint, which additionally included state antitrust claims, was filed on October 31, 1997. Defendants moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. This Court granted Defendants' motion to dismiss the federal and state antitrust claims and declined to exercise supplemental jurisdiction over the remaining state law claim for tortious interference with prospective business advantage. (Order Granting Defs.' Mot. to Dismiss at 3–9.) The Tenth Circuit reversed and remanded. *See Full Draw Productions v. Easton Sports, Inc.,* 182 F.3d 745 (10th Cir.1999).

After remand, Plaintiff was again granted leave to amend its complaint. In its answer to Full Draw's third amended complaint, AMO asserted counterclaims against Full Draw for (1) deceptive trade practices under the Colorado Consumer Protection Act; (2) common law trade libel and business disparagement; and (3) unfair competition under the Lanham Act and common law. (AMO's Answer to Third Am.Compl. ¶¶ 203–216.)

AMO's counterclaims arise out of Full Draw's efforts to discourage exhibitors and attendees from attending AMO's upstart Archery Trade Show. The conduct to which AMO objects falls into two categories. First, AMO alleges that "Full Draw knowingly and with the intent they be acted upon, made a series of false and

---

1. For the purposes of Plaintiff's motion to dismiss AMO's counterclaims, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

misleading representations of fact which disparaged the goods, services, property, and business of AMO, including the AMO Archery Trade Show." (AMO's Answer to Third Am.Compl. ¶ 204.) Second, AMO contends that "Full Draw knowingly and with the intent they be acted upon made a series of false representations as to the characteristics and benefits of the Bow-hunting Trade Show." (*Id.* ¶ 205.)

The statements allegedly disparaging of AMO began in 1995, when Stan Chiras, Full Draw's president, through a pro-motional piece and letters to AMO members and BTS exhibitors, belittled AMO's contributions to the success of the BTS and charged that "AMO isn't being entire-ly truthful in regard to their exhibitor sign ups." (*Id.* ¶ 204(a) –(c).) In February 1996 documents, Mr. Chiras criticized the exhibition building and hotel accommoda-tions planned for AMO's Archery Trade Show. (*Id.* ¶ 204(e), (f).) Mr. Chiras con-tinued his assault in the pages of *AIM Archery Industry Magazine,* a trade publi-cation. In the April/May 1996 issue, Mr. Chiras accused AMO of lying about the attributes of the building reserved for AMO's trade show and attempting to kill off the show produced by Mr. Chiras. (*Id.* ¶ 204(g), (h).) In that same article, and again in IDO's September 1996 publica-tion, *On Target,* Mr. Chiras asserted that AMO was attempting to take control of the archery industry for the benefit of large manufacturers, and at the expense of smaller dealers. (*Id.* ¶ 204(i)–(k).) AMO further alleges that Mr. Chiras faxed a letter to prospective exhibitors on Septem-ber 7, 1996 warning "Since the AMO show is in a smaller building, many of you won't be able to attend their show anyway." (Id.¶ 204(*l* ).)

Mr. Chiras made the following remarks in the October/November 1996 issue of *AIM Archery Industry Magazine:*

> Perhaps, had AMO not engaged in this underhanded, vile attempt to ruin every-thing I have accomplished in archery, things might have gone differently. . . .

> You [AMO] had expected to kill·us off by now ... but, since a large part of the industry can't even get into your smaller building, there will be a lot of companies who will be meeting the huge throngs of IDO dealers who will be attending THEIR SHOW.

(*Id.* ¶ 204(n).)

Turning to the second type of offending statement, false representations pertaining to the BTS, AMO alleges that, in an Octo-ber 1995 promotional piece, Mr. Chiras wrote, "According to our poll, a vast ma-jority of exhibitors intend to remain with the Bowhunting Trade Show, where the dealers are!" (*Id.* ¶ 205(a).) AMO also points to a January 4, 1996 speech by Mr. Chiras to exhibitors, in which he stated, "I'm asking you to give very serious thought to what is IDO. This is now their show. That can't change. It's a contract. This show now belongs to the dealers who are the most important link in a chain." (*Id.* ¶ 205(c)). Mr. Chiras made similar statements in the April/May 1996 *AIM Archery Industry Magazine* article, where he encouraged dealers to "stick with the option that has always offered a free and open market for everyone in this industry. Only now it's owned, lock, stock, and arrow by the Independent Dealer's Organiza-tion." (*Id.* ¶ 205(d)). The same magazine contained an article by Mr. Chiras stating, "IDO recently conducted an extensive phone survey of dealers who attending [sic] the 1996 Bowhunting Trade Show. . . . Phoning dealers from New Mexico to Ida-ho, New York to Florida, and all states in between, we tallied these results: 68 per-cent attending the IDO Bowhunting Trade Show; 10 percent attending the AMO Trade Show; two percent attending both shows; four percent attending neither show; and 16 percent undecided." (*Id.* ¶ 205(e).) Mr. Chiras also wrote a letter to exhibitors in late 1996 proclaiming "We're on track to have a pretty darn good event, considering IDO now owns the show (signed agreement Nov. 26)." (*Id.* ¶ 205(f).) The letter also claimed that

about 150 exhibitors had signed up for the show and that IDO would be running the show. (*Id.*) According to the letter, Norman Archery said that "over 1000 of their dealers have indicated they're coming to the IDO Bowhunting Trade Show." (*Id.*)

### Analysis

#### 1. Motion to Dismiss Standard

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must "accept all well-pleaded allegations in [AMO's counterclaims] as true, and draw all reasonable inferences in favor of [AMO]." *Kamplain v. Curry County Bd. Of Comm'rs,* 159 F.3d 1248, 1250 (10th Cir.1998). However, "the court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991). A motion to dismiss should be granted where "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *accord Johansen v. City of Bartlesville, Oklahoma,* 862 F.2d 1423 (10th Cir.1988).

#### 2. Counterclaim Count I—Colorado Consumer Protection Act

The Colorado Consumer Protection Act (the "CCPA") provides a private cause of action against persons who engage in deceptive trade practices to "any person who ... [i]n the course of the person's business or occupation, is injured as a result of such deceptive trade practice." Colo.Rev.Stat. § 6–1–113 (1999). In *Hall v. Walter,* the Supreme Court of Colorado established a five-element test for determining who can bring a private cause of action under the CCPA: Such an action can be brought by 'any person'[2] ... who establishes (1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the

challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury.

969 P.2d 224, 235 (Colo.1998). A claim under the CCPA "must be commenced within three years after the date on which the false, misleading, or deceptive act or practice occurred or the date on which the last in a series of such acts or practices occurred...." Colo.Rev.Stat. § 6–1–115.

■ Full Draw argues, and the Court agrees, that for AMO to overcome the three year statute of limitations, at least one of the statements made after September 14, 1996 (three years before the date the counterclaims were filed) must constitute a deceptive trade practice under the CCPA. Contrary to Full Draw's assertion, however, the Court finds that some of the statements allegedly made by Mr. Chiras during this time period could constitute deceptive trade practices. Section 6–1–105 of the CCPA contains a laundry list of prohibited deceptive trade practices. Most relevant here, "[a] person engages in a deceptive trade practice when ... such person ... [d]isparages the goods, services, property, or business of another by false or misleading representation of fact." Colo.Rev.Stat. § 6–1–103(h). It is also a deceptive trade practice to "[k]nowingly make a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person therewith." *Id.* § 6–1–105(e).

Turning first to the disparaging comments allegedly directed at AMO, Mr. Chi-

---

**2.** Under the CCPA, " 'Person' means an individual, corporation, business trust, estate, trust, partnership, unincorporated associa- tion, or two or more thereof having a joint or common interest, or any other legal or commercial entity." Colo.Rev.Stat. § 6–1–102(6).

ras' statement in the October/November 1996 *AIM Archery Industry Magazine* that "Since a large part of the industry can't even fit into [AMO's] smaller building, there will be a lot of companies who will be meeting the huge throngs of IDO dealers who will be attending THEIR SHOW" meets the first element for a CCPA claim. Whether AMO's building was adequate to accommodate the archery industry is, at least theoretically, objectively verifiable and factual rather than mere opinion. Thus, assuming for the purposes of the motion that Mr. Chiras actually made the statements and the statements were false, Full Draw disparaged AMO's services with false representations of fact, a deceptive trade practice under § 6–1–105(h).

Full Draw's post-September 14, 1996 statements touting the attributes of the BTS, if false, would also constitute a deceptive trade practice under the CCPA. *See* Colo.Rev.Stat. § 6–1–105(e). In particular, AMO alleges that Mr. Chiras wrote in the August/September 1996 *AIM Archery Industry Magazine* that his poll results showed that 68 percent of archery dealers planned to attend the BTS while only 10 percent planned to attend the AMO show. (AMO's Answer to Third Am. Compl. § 205(e).) This statement is obviously directed at the characteristics and benefits of the BTS; a sparsely-attended trade show would be undesirable to exhibitor and attendee alike. Taking as true AMO's allegations that the statistics were false and that Full Draw knew them to be false, the statement would constitute a deceptive trade practice under § 6–1–105(e).

The Court cannot accept Full Draw's contrary assertion that Mr. Chiras' statements made about BTS attendance were mere puffing. It is true that at common law, "[a] competitor is conditionally privileged to make an unduly favorable comparison of the quality of his own land, chattels or other things, with the quality of the competing land, chattels or other things of a rival competitor, although he

does not believe that his own things are superior to those of the rival competitor." Restatement (Second) of Torts § 649 (1977). However, the conditional privilege does not extend to false assertions of fact. *See id.* The Restatement explains:

> So long as nothing more is done than to exaggerate dishonestly the merits of the publisher's goods as compared with those of his competitor the publisher is not liable. If, however, he goes further and makes a direct attack upon the quality of his competitor's things by stating specific unfavorable facts even though he does so to supply a reason for his claim that his own things are superior, he cannot successfully claim a privilege. . . .

*Id.* § 649 cmt. c. Certainly Full Draw was free to shout from the rafters that the BTS was superior to AMO's Archery Trade Show. What Full Draw could not do, however, was support such an assertion with false statements of fact such as the allegedly false numerical comparisons of the intentions of archery dealers to attend the respective trade shows.

Full Draw may also have run afoul of the CCPA by stating (falsely, according to AMO) that the BTS was owned and operated by IDO. AMO alleges that the sale of BTS to IDO was never consummated. It is a deceptive trade practice to make false representations of "sponsorship, approval, status, [or] affiliation." Colo.Rev.Stat. § 6–1–105(e). To state that the BTS was sold to IDO, and that IDO was now responsible for producing the IDO, would obviously violate § 6–1–105(e) if the statements were indeed false.

Hence, AMO satisfied that first element for a private cause of action under the CCPA requiring that the defendant committed a deceptive trade practice. Further, there is little dispute that AMO can satisfy the second element requiring that the statements were made in the course of Full Draw's business. More difficult is the third element which asks whether the deceptive practice "significantly impacts the

public as actual or potential consumers of the defendant's goods, services, or property." *Hall,* 969 P.2d at 235.

Some of the considerations relevant to whether a challenged practice significantly impacts the public as consumers are the number of consumers directly affected by the challenged practice, the relative sophistication and bargaining power of the consumers affected by the challenged practice, and evidence that the challenged practice previously has impacted other consumers or has significant potential to do so in the future. *Martinez v. Lewis,* 969 P.2d 213, 222 (Colo. 1998).

■ *Hall* and *Martinez,* companion cases recently decided by the Supreme Court of Colorado, provide the two most important guideposts for determining whether Full Draw's alleged conduct had a sufficient impact on the public as consumers to be the subject of a private suit under the CCPA. *Hall* involved a suit against real estate developers who marketed residential lots under the false pretense that lot owners would have a right-of-way across a piece of land owned by the plaintiff. 969 P.2d at 227. "[B]ecause the misrepresentations were directed to the market generally, taking the form of widespread advertisement and deception of actual and prospective purchasers", the statements significantly impacted the public as consumers. *Id.* at 235.

The opposite result was reached in *Martinez.* There, the plaintiff brought suit under the CCPA against a doctor retained by State Farm Mutual Automobile Insurance Company to perform independent medical evaluations. 969 P.2d at 215. The doctor's medical conclusion that plaintiff was "malingering" led to denial of the plaintiff's insurance claim. *Martinez,* 969 P.2d at 215. The plaintiff argued that the doctor committed a deceptive trade practice by falsely representing to State Farm that he was capable of diagnosing organic brain injury when, in fact, he was not qualified to do so. *Id.* at 220–21. Because

the deception was committed against only one person, State Farm, and because the deceived party was a large, sophisticated insurance company rather than a vulnerable individual consumer, the plaintiff could not establish that the deceptive practice significantly impacted the public as consumers. *Id.* at 222.

The magnitude of the impact on the public as consumers caused by Full Draw's alleged actions falls somewhere in between *Hall* and *Martinez.* Like *Hall,* Mr. Chiras' statements were disseminated widely through magazine articles, mass mailings, and faxes. Unlike *Hall,* however, it appears that the audience for Mr. Chiras' statements was comprised primarily of businesses in the archery industry rather than individual members of the public at large. The apparent business-to-business nature of Mr. Chiras' communications reduces the impact of the deceptive practice on the public as consumers. *See Martinez,* 969 P.2d at 222 (noting the relevance of the number, sophistication, and bargaining strength of the parties affected by the deceptive practice). While the Court is skeptical whether Mr. Chiras' actions sufficiently impacted the public as consumers to succeed on a CCPA claim, it is not the Court's role, on a Rule 12(b)(6) motion, to evaluate whether AMO's claim will ultimately prevail. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Consequently, AMO's allegation that the public was injured by Mr. Chiras' statements is sufficient to resist Full Draw's motion to dismiss.

■ The fourth and fifth *Hall* elements require AMO to prove that Mr. Chiras' actions caused injury to AMO's legally protected interest. *Hall,* 969 P.2d at 235. AMO asserts that it suffered economic injury when trade show exhibitors and attendees did not attend AMO's trade show as a result of being deceived by Mr. Chiras. Colorado courts have specifically recognized that business losses that result when deceptive trade practices dissuade poten-

tial attendees from attending a trade show constitute an injury to an interest legally protected by the CCPA. *See Heller v. Lexton–Ancira Real Estate Fund,* 809 P.2d 1016, 1022 (Colo.App.1990) (rev'd on other grounds, *Lexton–Ancira Real Estate Fund v. Heller,* 826 P.2d 819 (Colo.1992)). Therefore, AMO's allegations of injury caused by Mr. Chiras' actions are sufficient to state a claim under the CCPA.

### 3. Counterclaim II—Trade Libel and Business Disparagement

■ AMO essentially relies on the same set of factual allegations to support its trade libel claim as it relied upon for its claim under the CCPA. (AMO Answer to Third Am.Compl. ¶¶ 207–211.) Full Draw moves to dismiss AMO's trade libel counterclaim on the grounds that none of Mr. Chiras' offending statements occurred within the two-year statute of limitations applicable to such claims. (Pl.'s Mot. to Dismiss Def.'s Counterclaims at 7.) AMO argues in response, however, that a six-year statute of limitations applies to claims for trade libel. (AMO's Resp. to Pl.'s Mot. to Dismiss at 4.)

AMO bases its conclusion that a six-year statute of limitations applies to trade libel claims on *Cartwright v. Colorado Bank of Walsh, Inc.,* 658 F.Supp. 240 (D.Colo.1987) and *Idaho Norland Corp. v. Caelter Indus. Inc.,* 509 F.Supp. 1070 (D.Colo.1981). *Idaho Norland* determined that Colorado's then-existing one year statute of limitations for slander and libel claims, Colo. Rev.Stat. § 13–80–102 (1973), did not apply to a claim for trade libel. 509 F.Supp. at 1071. Instead, *Idaho Norland* applied the existing six-year catchall statute of limitations for actions on the case, Colo. Rev.Stat. § 13–80–110(g) (1973). *Id.* at 1072. *Cartwright* followed *Idaho Norland* and applied a six-year statute of limitations to a trade libel claim. 658 F.Supp. at 247. However, in 1986, after *Idaho Norland* was decided, the Colorado legislature modified Colorado's statutes of limitations framework. No longer does Colorado

have a six-year statute of limitations for actions on the case. Instead, Colorado now applies a two-year statute of limitations for such tort actions. *See* Colo.Rev. Stat. § 13–80–102(a) (1999). Thus, a two-year statute of limitations applies to AMO's trade libel claim, and *Idaho Norland,* which merely applied a now-repealed statutory section, certainly does not command a contrary result.

■ AMO argues, however, that even if its trade libel and business disparagement claim would be time-barred by a two-year statute of limitations, the claim is nevertheless resurrected by Colorado's counterclaim revival statute, which provides:

> Except for causes of action arising out of the transaction or occurrence which is the subject matter of the opposing party's claim, the limitation provisions of this article shall apply to the case of any debt, contract, obligation, injury, or liability alleged by a defending party as a counterclaim or setoff. A counterclaim or setoff arising out of the transaction or occurrence which is the subject matter of the opposing party's claim shall be commenced within one year after service of the complaint by the opposing party and not thereafter.

Colo.Rev.Stat. § 13–80–109.

When Full Draw filed its first complaint on May 30, 1997, AMO's trade libel counterclaim based on Mr. Chiras' statements to potential trade show attendees and exhibitors was not yet barred by the two year statute of limitations. The trade libel counterclaim was actually filed on September 15, 1999, roughly three years after the last of Mr. Chiras' offending statements and approximately two and one half years after Full Draw's complaint was filed. AMO argues that, under § 13–80–109, the statute of limitations on the trade libel counterclaim was tolled at least until AMO was required to file a responsive pleading. (AMO's Resp. to Pl.'s Mot. to Dismiss at 2–3.) Full Draw replies, and the Court agrees, that the plain language of § 13–80–109 gave AMO one year from Full Draw's

May 30, 1997 complaint, and no longer, to file a counterclaim for trade libel.

AMO's argument rests primarily on the compulsory counterclaim rules contained in Rule 13(a) of the Federal Rules of Civil Procedure. Under Rule 13(a), a party waives counterclaims that arise out of the same transaction or occurrence if they are not asserted in the first responsive pleading. 6 Charles A. Wright, Arthr R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1417, at 129–30 (2d ed.1990). When a defendant files a Rule 12(b)(6) motion, which is not a pleading, Rule 13(a)'s preclusive effect on compulsory counterclaims is not implicated. *See Mellon Bank v. Ternisky,* 999 F.2d 791, 795 (4th Cir.1993). The Court agrees that because AMO's counterclaims were filed in its first responsive pleading, they are not barred by the Federal Rules of Civil Procedure.

The Court must disagree, however, with AMO's conclusion that, because the counterclaims are not barred by the Federal Rules of Civil Procedure, Colorado's statute of limitations must be tolled for an equal amount of time. The Court of Appeals for the District of Columbia directly faced the same question in *Hartford Accident & Indem. Co. v. Pro–Football, Inc.,* holding that compulsory counterclaims that expired after the plaintiff's complaint was filed were time-barred "even though Rule 12(a)(4) of the Federal Rules of Civil Procedure extends the time for a responsive pleading to ten days after the denial of a motion under Rule 12, and [the defendant] advanced its counterclaim in an answer timely filed under that rule." 127 F.3d 1111, 1118 (1997); *see also* 6 Wright, Miller & Kane § 1419, at 153 ("The test of Rule 13(a) itself does not offer any solution to the problem of whether the institution of an action tolls the running of the limitations period on compulsory counterclaims or reflect any federal policy on the question."). Rather, the question of whether, and to what extent, the filing of a complaint waives or tolls the statute of limitations for compulsory state law counter-claims must be resolved with reference to the applicable state law. *See Hartford v. Gibbons & Reed Co.,* 617 F.2d 567, 569 (10th Cir.1980).

Many courts have held that the filing of a complaint tolls the statute of limitations for compulsory counterclaims. *See, e.g., Burlington Indus., Inc. v. Milliken & Co.,* 690 F.2d 380, 389 (4th Cir.1982); *UST Capital Corp. v. Charter Nat'l Life Ins. Co.,* 684 F.Supp. 757, 759 (D.Mass.1986). This conclusion has not been unanimous, however. *See Pro–Football,* 127 F.3d at 1118–19 (holding that under the law of the District of Columbia the filing of a complaint does not toll the statute of limitations on a counterclaim). Fortunately, the Colorado legislature has spoken clearly and directly on the issue in § 13–80–109. Under Colorado law, the filing of a complaint does toll the statute of limitations on counterclaims arising out of the same transaction or occurrence. *See* Colo.Rev. Stat. § 13–80–109. Section 13–80–109 also clearly specifies that the amount of time a defendant has to file such a counterclaim is measured with reference to the plaintiff's complaint, giving the defendant one year, but no more, to file the counterclaim. *Id.*

In contrast, AMO argues that the tolling of the statute should be governed, not by reference to the date of the filing of the complaint, but instead by the date on which the defendant's answer was due. (AMO's Resp. to Pl.'s Mot. to Dismiss at 2–3.) At least one state, Texas, follows AMO's desired approach. *See* Tex.Civ. Prac. & Rem.Code Ann. § 16.069 (West 1997) (allowing an otherwise time-barred counterclaim arising out of the same transaction or occurrence to be filed within thirty days of the date the party's answer is required). Under Colorado law, however, AMO had one year (but no more) from Full Draw's May 30, 1997 complaint to file its counterclaim for trade libel and business disparagement. *See* Colo.Rev.Stat. § 13–80–109. Thus, the counterclaim is barred by the two-year statute of limitations for tort claims, § 13–80–102(a).

### 4. Counterclaim III—Unfair Competition

■ Based on the same allegations of false and misleading statements by Mr. Chiras, AMO asserts a claim for relief under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a), and the common law of unfair competition. (AMO's Answer to Third Am.Compl. ¶¶ 212–216.) Full Draw contends, however, that AMO's Lanham Act counterclaim is barred by the statute of limitations. (Pl.'s Mot. to Dismiss at 7–8.) According to Full Draw, a two-year statute of limitations governs the Lanham Act claim, supplied by either Colo.Rev. Stat. § 13–80–102(a) or § 13–80–102(g). Section 13–80–102(a) provides a two-year statute of limitations for "[t]ort actions, including but not limited to actions for negligence, trespass, malicious abuse of process, malicious prosecution, outrageous conduct, interference with relationships, and tortious breach of contract." Colo. Rev.Stat. § 13–80–102(a) (1999). Under § 13–80–102(g), "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" must be brought within two years of the date of accrual. Colo.Rev.Stat. § 13–80–102(g). The Court finds, however, that neither § 13–80–102(a) nor § 13–80–102(g) apply to a claim under the Lanham Act. Instead, Colorado's three-year statute of limitations for fraud, misrepresentation, concealment, and deceit, § 13–80–101(c), governs such claims.

While Full Draw is certainly correct that the Lanham Act is a federal statute that provides a cause of action but not a statute of limitations, § 13–80–102(g) cannot bar AMO's Lanham Act claim because "a state statute of limitations will not be applied when it discriminates or expresses hostility against a federal cause of action." *Trustees of Wyoming Laborers Health & Welfare Plan v. Morgen & Oswood Const. Co.,* 850 F.2d 613, 619 (10th Cir.1988) (citing *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). In fact, statutory provisions such as § 13–80–

102(g), which purport to establish a limitations period for claim based on a federal statute that does not specify a limitations period, have historically been of little consequence. In *Wolf Sales Co. v. Rudolph Wurlitzer Co.,* for example, a defendant in a Sherman Act and Clayton Act action asserted as a defense § 13–80–102(g)'s predecessor, which provided that "[a]ll actions upon a liability created by a federal statute ... for which actions no period of limitations is provided in such statute shall be commenced within two years after the cause of action shall have accrued." 105 F.Supp. 506, 507–08 (D.Colo.1952). The court observed that "a state cannot single out federal legislation and subject a cause of action created thereunder to a shorter period of limitation than that which would govern the same or a similar cause of action if it arose under the law of the particular state." *Wolf Sales,* 105 F.Supp. at 508. Consequently, a court must "determine the nature of a private civil action under the [federal statute] and ... compare its local period of limitation that is accorded an action of a same or similar nature which arises under the law of the forum." *Id.* (applying six-year statute of limitations for actions on the case to the federal antitrust claims).

More recently, in *Wyoming Laborers,* the Tenth Circuit addressed a claim under the Employee Retirement Income Security Act (ERISA) to recover delinquent pension and insurance contributions from an employer. 850 F.2d at 614–15. Although ERISA, a federal statute, provided the cause of action but no statute of limitations, the Tenth Circuit refused to apply Wyoming's two-year statute of limitations for claims based on federal statutes without a statute of limitations. *Id.* at 619–20. The two-year statute of limitations was found to discriminate against federal claims in light of the longer limitations periods for similar state claims. *Id.* Therefore, in lieu of the statute of limitations for non-time-limited federal claims, the court applied Wyoming's ten-year stat-

ute of limitations for actions based on a written contract because the ERISA claim was most closely related to a contract action. *Id.* at 620–21.

The real objective, then, is to determine which of Colorado's limitations periods is "most analogous" or "most appropriate" to an unfair competition claim under the Lanham Act. *Wilson,* 471 U.S. at 268, 105 S.Ct. 1938; *see also Victoria Oil Co. v. Lancaster Corp.,* 587 F.Supp. 429, 431 (D.Colo.1984) (observing that courts "must determine what common law pigeon-hole would most nearly fit" the federal claim). Defining the nature of the federal claim for statute of limitations purposes is a question of federal law. *Wilson,* 471 U.S. at 270, 105 S.Ct. 1938. While Full Draw contends, albeit without citation to any authority, that § 13–80–102(a)'s two year limitations for tort actions applies to Lanham Act claims, the Court is persuaded by the majority view that the state statute of limitations for fraud claims is actually the most appropriate. *See Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 191–92 (2d Cir.1996) (applying state fraud statute of limitations in analysis of latches defense to Lanham Act claim); *Johannsen v. Brown,* 797 F.Supp. 835, 839 (D.Or.1992) (applying fraud statute of limitations to causes of action under the Lanham Act); *Unlimited Screw Prods., Inc. v. Malm,* 781 F.Supp. 1121, 1125 (E.D.Va.1991) (same); *Monkelis v. Scientific Sys. Servs.,* 653 F.Supp. 680, 684 (W.D.Pa.1987) (same); *PepsiCo, Inc. v. Dunlop Tire & Rubber Corp.,* 578 F.Supp. 196, 199 (S.D.N.Y.1984) (same); *Fox Chem. Co. v. Amsoil, Inc.,* 445 F.Supp. 1355, 1359 (D.Minn.1978) (same).

The language of the federal statute in question provides the starting point for determining which limitations period to apply. *See Wilson,* 471 U.S. at 268, 105 S.Ct. 1938. The Lanham Act states that among its purposes are the goals of "protect[ing] persons engaged in [interstate] commerce against unfair competition; [and] prevent[ing] fraud and deception in such com-

merce." 15 U.S.C.A. § 1127 (West 1998). "As the language of the Act makes clear, there is an intimate relationship between fraud and injury under the Lanham Act." *Conopco,* 95 F.3d at 191; *see also PepsiCo,* 578 F.Supp. at 199 (noting that both the Lanham Act and common law fraud concern deception and misrepresentation). Also militating in favor of applying the limitations period for fraud, misrepresentation, concealment, and deceit is the fact that the tort of unfair competition, which encompasses much of the same subject matter as the Lanham Act, has its origins in the common law tort of deceit. *See University of Colorado Found., Inc. v. American Cyanamid,* 880 F.Supp. 1387, 1403 (D.Colo.1995) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 157, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989)).

In sum, the Court concludes that the three-year statute of limitations under § 13–80–101(c) applies to claims brought under § 43(a) of the Lanham Act. Because Full Draw's statute of limitations defense fails, its motion to dismiss AMO's counterclaim for unfair competition under the Lanham Act must be denied.

### *Conclusion*

AMO alleged facts sufficient to state a claim upon which relief can be granted under the Colorado Consumer Protection Act. Consequently, Full Draw's motion to dismiss AMO's counterclaim for deceptive trade practices under the Colorado Consumer Protection Act is **DENIED.**

AMO's counterclaim for trade libel and business disparagement is barred by the two year statute of limitations for tort claims contained in Colo.Rev.Stat. § 13–80–102(a). Moreover, the claims cannot be revived by Colo.Rev.Stat. § 13–80–109. Thus, Full Draw's motion to dismiss the counterclaim for trade libel and commercial disparagement is hereby **GRANTED** and the counterclaim for trade libel and commercial disparagement is **DISMISSED WITH PREJUDICE.**

Colorado's three-year statute of limitations for fraud claims applies to AMO's counterclaim for unfair competition under the Lanham Act. Therefore, AMO's Lanham Act claim is not barred by the statute of limitations and Full Draw's motion to dismiss AMO's Lanham Act counterclaim is hereby **DENIED.**